# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | NO. 2:07-CR-38 |
| ) | |
| JUAN CARLOS TORANZO,   ) | |
| ) | |
| ) | |
| Defendant.   ) | |

## OPINION AND ORDER

This matter is before the Court on the Motion to Quash Arrest and Suppress Evidence filed by Defendant on April 13, 2007. Defendant was indicted on March 7, 2007, on one count of possessing more than 500 grams of a mixture and substance containing cocaine powder. The charge arose from a February 22, 2007, traffic stop on Interstate 65 in which an officer discovered three packages of cocaine powder hidden in Defendant's car. In this motion, Defendant argues that the drugs discovered in his car during the traffic stop should be suppressed. For the reasons set forth below, the motion is **DENIED**.

Findings of Fact

The Court held a suppression hearing on May 3, 2007. At the conclusion of the hearing, the Court took the instant motion under advisement.  In making the following findings of fact, the Court considered the credibility of the witnesses.

On February 22, 2007, at approximately 10:30 a.m., Deputy Commander Oscar Martinez ("Commander Martinez") of the Lake County Highway Interdiction Unit was patrolling Interstate 65 northbound at approximately the 232 mile marker in DeMotte, Indiana (in Jasper County). Commander Martinez saw a green Audi traveling southbound on Interstate 65. The Audi was traveling faster than the normal flow of traffic. Commander Martinez spotted the Audi on radar traveling at 78 miles per hour in a posted 70 miles per hour zone. Commander Martinez made a U-turn and followed the Audi southbound.

Commander Martinez initially paced the Audi at about 77 miles per hour. While Commander Martinez was following the Audi, it moved from the right lane to the left lane without using its turn signal and sped up to approximately 78 to 79 miles per hour to pass a semi-truck. The Audi then changed back to the right lane without using its turn signal. Commander Martinez stopped the Audi by activating the red and blue lights of his police unit.

Commander Martinez approached the driver's side window of the Audi and discovered Defendant inside the car. Defendant was wearing a dress shirt and tie. Commander Martinez explained the reason for

2

the stop. Then Defendant provided his license and registration upon Commander Martinez's request. Commander Martinez noticed that Defendant's hands were shaking. Commander Martinez then asked Defendant to accompany him to his police unit while Commander Martinez issued a warning and citation.

While in the police unit, Commander Martinez questioned Defendant. He asked Defendant who owned the Audi. Defendant said the Audi was his and that he had purchased it a few months before. Commander Martinez asked Defendant where he was coming from and going to. Defendant said he was coming from Lyons, Illinois and was on his way to Lafayette, Indiana to visit a friend of his who owns a store in Lafayette. Commander Martinez asked Defendant the address of his destination in Lafayette. Defendant did not know it but said he was going to the downtown area. Commander Martinez asked Defendant if he was off of work. Defendant said "yes," he worked as a sales manager at a boot store and handed Commander Martinez his business card.

As Defendant handed Commander Martinez his business card, Commander Martinez again noticed that Defendant's hand was shaking. Commander Martinez also noticed that Defendant's voice wavered when he spoke and that Defendant was sweating even though it was cool outside and in the police car.

Commander Martinez also noticed a slight odor of alcohol coming from Defendant's breath. Commander Martinez asked Defendant

3

if he had been drinking. Defendant said he had not been drinking that day, but admitted to staying out late while drinking the night before.

When Commander Martinez was done writing the warning, he asked Defendant to meet him outside the police vehicle. At this point, about 7-8 minutes had elapsed since Commander Martinez pulled Defendant over.

In front of the police unit, Commander Martinez returned Defendant's documents and issued the warning citation. After about 5-10 seconds, Commander Martinez said something like "Excuse me, sir, do you have any alcohol, weapons or narcotics inside the car?" Defendant said "no." Commander Martinez then asked Defendant if he could search the Audi for those items. The Defendant replied "sure." Commander Martinez instructed Defendant to sit in the police unit during the search. Commander Martinez searched the Audi and found cocaine.

Conclusions of Law

The Fourth Amendment prohibits warrantless searches unless the search falls under one of the recognized exceptions to the warrant requirement. *United States v. Denney*, 771 F.2d 318, 320 (7th Cir. 1985). If a search is conducted without a warrant, then the Government bears the burden to prove that an exception to the

4

warrant requirement existed at the time of the search. *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001).

Voluntary consent to a search is a well-recognized exception to the need for a warrant. *See, e.g., U.S. v. Jensen*, 169 F.3d 1044, 1048 (7th Cir. 1999). The question whether consent to a search was in fact "voluntary" or was the product of duress or coercion is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). The government must prove that consent was voluntary by a preponderance of the evidence. *U.S. v. Mendoza,* 438 F.3d 792, 796 (7th Cir. 2006).

In this case, Defendant agrees that he was properly stopped by Commander Martinez for speeding. *See Whren v. United States,* 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). And Defendant concedes that he gave consent to the search of his car. Despite this, Defendant argues that his consent was not voluntary because it was given while he was unlawfully detained. Defendant contends that Commander Martinez either re-detained him after the ticketing process ended or unreasonably prolonged the traffic stop by posing two questions 5-10 seconds after he returned Defendant's license and registration and issued the warning. Commander Martinez first said something like "Excuse me, sir, do you have any alcohol,

5

weapons, or narcotics inside the car?" After Defendant indicated that he did not, Commander Martinez asked if he could search the vehicle. Defendant responded "sure." These questions took less than 1 minute.

*Defendant was not Re-detained after the Initial Traffic Stop*

First, Defendant argues that Commander Martinez's post-ticketing questions illegally detained him without reasonable suspicion after the traffic stop ended thereby converting a legal traffic stop into an illegal detention and spoiling the validity of the later consent.  Supposedly Defendant was detained because Commander Martinez "posed a commanding and very loaded question" after the ticketing process ended and never gave Defendant a verbal cue to leave by, for instance, advising that Defendant was free to go. (Defendant's Supplemental Memorandum in Support of the Motion to Quash Arrest and Suppress Evidence (D.E. # 18) at ¶ 3.)

Here, regardless of being given a verbal cue to leave, once Defendant's materials were returned and he had his warning, a reasonable person would not have believed he or she was still being detained. *See, e.g., Ohio v. Robinette*, 519 U.S. 33 (1996) (reversing Ohio Supreme Court's suppression of evidence recovered from a consensual search after ticketing process ended and officer did not advise defendant he was free to go); *United States v. Chan*, 136 F.3d 1158, 1160 (7th Cir. 1998) (affirming that "a reasonable

6

person would not have believed he was being detained" when ticketing process ended and officer did not advise defendant he was free to go). Indeed, when the ticketing process was complete, there was no overbearing show of authority, the officer was not blocking defendant's exit or vehicle and the officer and Defendant were standing outside the police unit. Nor were guns drawn, threats made, or voices raised.

Moreover, contrary to Defendant's contention, Commander Martinez's questions were not "commanding and very loaded" thereby detaining the Defendant. In fact, the Supreme Court upheld a similar line of questioning in *Robinette*. There, Defendant was lawfully stopped for speeding. *Robinette*, 519 U.S. at 35. After the officer returned the defendant's license, registration and warning and without any verbal cue that the detention was over, the officer said "[o]ne question before you get gone: [A]re you carrying any illegal contraband in your car? Any weapons of any kind, drugs, anything like that?" *Id.* at 35-36. The defendant answered no. *Id.* at 36. Then the officer asked if he could search the car and the defendant consented. *Id.* The Supreme Court upheld this line of questioning in no way indicating that the officer's questions were an unlawful detention, as Defendant would have this Court do. *Id.* at 39-40. And here, Officer Martinez's questions were no more commanding or loaded than the officer's questions in *Robinette.* In fact, if anything, "excuse me, sir" is a more deferential

7

introduction to a question than "one question before you get gone." Accordingly, the Court sees no basis for finding that Commander Martinez's two post-ticketing questions indicate that Defendant was detained at the conclusion of the ticketing process.

After the ticketing was complete, Commander Martinez was free to ask Defendant any questions without probable cause or reasonable suspicion just as he could with anyone on the street or in a public place. *United States v. Childs*, 277 F.3d 947, 950 (7th Cir. 2002)("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him of the person is willing to listen.")(citations omitted).  And Commander Martinez did ask Defendant for consent to search the car, which Defendant freely granted. Although Defendant may not have known he could refuse the search, Defendant was not threatened, coerced, or commanded. And Defendant consented after a single request. Because Defendant was not detained any more than a person answering an officer's question in a public place and because the record indicates consent was otherwise freely given, Defendant's consent was voluntary. *See, e.g., Chan*, 136 F.3d at 1160.

Although unnecessary to the present analysis, even if Defendant were detained as a result of Commander Martinez's request to search the Audi and were not free to go at the close of the

8

ticketing process, Commander Martinez had reasonable suspicion sufficient for an investigatory stop. *See U.S. v. Turner*, No. 1:01CR24, 2002 WL 257517, *8 (N.D. Ind. February 20, 2002)("Here, something did occur during the traffic stop which generated the necessary reasonable suspicion to justify a further detention. That "something" was the smell of alcohol in the vehicle and Korta Queary falsely informing the officers that he was Breck Queary, something the officers knew to not be true.") "Reasonable suspicion" means "some objective manifestation that the person stopped is or is about to be, engaged in criminal activity." *United States v. Johnson*, 383 F.3d 538, 542 (7th Cir. 2004)(citations omitted). Here, Defendant's breath smelled of alcohol. Also suspicious were Defendant's ignorance as to where specifically he was going and his failure to explain why he did not know where he was going.[1] Accordingly, for these reasons, Defendant's motion is **DENIED.**

---

[1] To be sure, although defendant increasingly sweated, had shaky hands, and had a wavering voice even after he learned Commander Martinez was only issuing a warning, the Court does not rely on this impression of nervousness in finding reasonable suspicion. *U.S. v. Wilkie*, 182 Fed. Appx. 533, 536 (7th Cir. 2006) ("That a defendant 'appeared nervous' is a subjective impression that we have held contributes nothing to the objective basis for suspecting criminal activity, and this must remain true notwithstanding an officer's attempt to recast his subjective impressions in objective-sounding terms like 'labored breathing' or 'pulsating carotid artery.'"(internal citations omitted)).

*Commander Martinez did not Unreasonably Prolong the Traffic Stop*

Defendant also argues that Commander Martinez violated his Fourth Amendment rights by unreasonably prolonging the traffic stop. Although a "seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution," *Illinois v. Caballes*, 543 U.S. 405, 407 (2005), Defendant fails to identify any unreasonable aspect of the traffic stop at issue.

First, Defendant argues that Officer Martinez should have released Defendant once the traffic stop was over. The Seventh Circuit disagrees. In *Childs*, an en banc panel held that an officer need not release a stopped driver the instant the steps to check license, registration, and outstanding warrants, and to write a ticket, had been completed. *Childs*, 277 U.S. at 953. The additional minute that the two questions took does not make the otherwise 7-8 minute stop unreasonable. *See, e.g., United States v. Muriel*, 418 F.3d 720, 725 (7th Cir. 2005)(holding that 13 minutes between the time defendant was stopped and the time he gave consent for a search was reasonable); *Childs*, 277 F.3d at 954 (holding that questioning that prolongs stop by "a minute or so" is not unreasonable).

And Defendant argues that Commander Martinez should not have strayed from the purpose of the stop, *i.e.*, to issue a warning. The

10

Seventh Circuit has explicitly held, however, that an officer may ask questions unrelated to the initial purpose of a traffic stop regardless of whether the officer has reasonable suspicion to support his unrelated questions. *Muriel*, 418 F.3d at 725.

   Here, the entire transaction between Commander Martinez and Defendant was reasonable. Commander Martinez stopped Defendant's car based on probable cause. The entire stop took about 7-8 minutes. Then Commander Martinez asked two follow up questions including whether Defendant would consent to a search. These questions took less than a minute. Nothing in this process is out of the ordinary, much less unreasonable. *See, e.g., Childs*, 277 F.3d at 954 ("What happened here must occur thousands of times daily across the nation: Officers ask persons stopped for traffic offenses whether they are committing any other crimes. That is not an unreasonable law-enforcement strategy, either in a given case or in gross; persons who do not like the question can decline to answer . . . There is therefore no reason to doubt the validity of Childs's consent.") Accordingly Commander Martinez did not violate Defendant's Fourth Amendment rights through the consensual search. And, as discussed above, Defendant's argument that the consent was involuntary is unpersuasive as the consent was not the product of an illegal detention.

For the aforementioned reasons, Defendant's motion to suppress is **DENIED**.


DATED: **May 4, 2007**             /s/ **RUDY LOZANO, Judge**
                                   **United States District Court**